**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | Civil Action No. |
|---|---|
| SportsQuest, Inc.<br><br>Plaintiff,<br><br>-against-<br><br>Epic Worldwide, Alan Tucker, PM Barbee Holdings, Goldwater Group, Energy 101 Consulting LLC, Exuma Capital Inc., JJM Consulting Inc., KCG Americas LLC, National Financial Services, LLC and John Bryan Pike<br><br>Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

{

**TABLE OF CONTENTS**

I. PRELIMARY STATEMENT ……………………………………........................................4


II. STATEMENT OF FACTS …………………………………………………………….5


III. ARGUMENT

    I.       Legal Standard…………………………………………………………………….5

    II.      SPQS SATISFIES THE REQUIREMENTS FOR A TEMPORARY
            RESTRAINING ORDER AND A PREMLINARY INJUNCTION……………...6

          a.  SPQS Will Succeed on The Merits…...………………………………….6

          b.  SPQS Will Suffer Irreparable Harm Absent Injunctive Relief……………...8

          c.  The Balance of Hardships Tilts Decidedly Toward SPQ……………………..9

          d.  The Public Interest Favors Granting Injunctive Relief ……………………….9

IV. CONCLUSION………………………………………………………………..…..10

## TABLE OF AUTHORITES

1. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015)………..5

2. *Echo Design Grp. v. Zino Davidoff S.A.*, 283 F.Supp. 2d 963, 966 (S.D.N.Y. 2003)…….5

3. *BigStar Entm't Inc. v. Next Big Star, Inc.,* 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000)…..6

4. *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995)……………………….8

5. *Firemen's Ins. Co. of Newark, New Jersey v. Keating*, 753 F. Supp. 1146, 1153 (S.D.N.Y.

   1990)………………………………………………………………………………8

# I. PREMINIARY STATEMENT

Plaintiff, SportsQuest, Inc. ("SPQS") respectfully submits this Memorandum of Law in support of an Order to Show Cause requiring defendants Epic Worldwide, Alan Tucker, PM Barbee Holdings, Goldwater Group, Energy 101 Consulting LLC, Exuma Capital Inc., JJM Consulting Inc., KCG Americas LLC, National Financial Services, LLC and John Bryan Pike (collectively "Defendants") to show why, pursuant to F.R.C.P. 65(a) and 65(e,) a temporary restraining order and a preliminary injunction should not be entered enjoining Defendants from transferring or assigning any shares of SportsQuest, Inc.'s common or preferred stock until further order of the Court.  In the absence of such relief SPQS will suffer irreparable harm.

SPQS commenced this action for declaratory and injunctive relief to remedy SPQS's injury from improper and illegal issuance of inordinate amounts of company stock issued in exchange for zero consideration. SPQS primarily is seeking a declaration that the shares issued were void for want of consideration and due to other illegalities. Therefore, the share issuance was never actually consummated.

SPQS easily satisfies the requirements for injunctive relief. First, SPQS is likely to succeed on the merits –or, at a minimum, can show serious questions going to the merits. In this regard, SPQS's new management cannot locate any record or evidence of consideration provided by the Defendants for the SPQS stock they received thereby rendering them void.

Second, without injunctive relief, SQPS will suffer irreparable harm. SPQS faces imminent and irreparably injury if Defendants attempt to market and complete a sale of their shares to another individual during the pendency of this action. The marketing and transfer of these improperly and illegally issued shares will cause imminent harm to SPQS, its business

goodwill, and reputation amongst potential investors. Third, the balance of hardships tilts decisively in SPQS's favor. A limited and temporary injunction – pending only the quick resolution of the merits of this action will affect no unfair hardship on the Defendants.  Last, the public interest is best served in enjoining the marketing and transfer of these suspect shares, so that individuals do not acquire these illegally and improperly issued shares, causing them harm.

Given these circumstances SPQS is entitled to all relief sought.

## II. STATEMENT OF MATERIAL FACTS

SPQS incorporates by reference as if fully set forth herein the material facts set forth in Irina Veselinovic's Declaration dated August 8, 2022, in support of the instant application (" Veselinovic Dec.").

## III. ARGUMENT

I.      LEGAL STANDARD

To obtain a preliminary injunction, a moving party must show: (1) "a likelihood of success on the merits or…sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the Plaintiff's favor; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved." See *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015) (internal citations omitted). The temporary restraining order standard is the same. *See, e.g. Echo Design Grp. v. Zino Davidoff S.A.*, 283 F.Supp. 2d 963, 966 (S.D.N.Y. 2003).

II.     SPQS SATISFIES THE REQUIREMENTS FOR A TEMPOARY
        RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

   a.   SPQS Will Succeed On the Merits

To establish a likelihood of success on the merits, a plaintiff "need not show that

success is certain, only that the probability of prevailing is 'better than fifty percent'". *BigStar*

*Entm't Inc. v. Next Big Star, Inc.,* 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000) (quoting *Abdul*

*Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). While SPQS surpasses this standard, it

can also certainly satisfy the alternative test of "sufficiently serious questions going to the merits

to make them a fair ground for litigation" given that the balance of hardships stemming from any

limited and temporary relief tips decidedly in their favor. *See Benihana*, 784 F.3d at 894-95

(internal citations omitted); *see also* § II.C.

        Here SPQS will succeed on the merits. In June of 2021, SPQS came under new

management with Mina Mar Group Corp. acquiring a controlling interest from Jeffrey Burns

("Burns"), as Seller, who was also the prior CEO of SPQS.  Veselinovic Dec ¶4. At the time,

Burns represented that he is the record owner and holder of all issued Preferred Shares, and

Controlling Interest (Control Stock) of SPQS and agreed to sell all of his shares to buyer. Id.

New management acquired about 1.9 Billion in stock. Id. Under new management SPQS's stock

price rose from about 0.002 to 0.02 during the first twelve months, which is about an 1,800.00%

increase. Veselinovic Dec ¶5.  However due to the trading of billions of shares, not by new

management, the stock price returned to about 0.002. Id. It is estimated that about Three Million

Dollars was generated from the billions of shares of stock sold. New Management never issued

any new shares. Veselinovic Dec ¶6.

        Upon further investigation into the sell-off, new management discovered that

Burns despite his representations failed to convey his entire interest in SPQS. Veselinovic Dec ¶7. Upon information and belief Burns only transferred between 65% to 68% of his interest to new management. Id. Burns' remaining interest which totals about 1.7 billon shares was transferred in part to the Defendants, without consideration. Id. Upon information and belief, Burns issued Defendants certain shares of stock in exchange for the Defendants selling the shares who then promised to pay Burns seventy-five percent (75%) of the proceeds while the Defendants retained the remaining twenty-five percent (25%). Veselinovic Dec ¶8.

Upon information and belief, Burns transferred the following: (i) 360,000,000 shares of SPQS stock to Epic World Wide, (ii) 425,000,000 shares of SPQS stock to Alan Tucker, (iii) 195,000,000 shares of SPQS stock to PM Barbee Holdings, (iv) 195,000,000 shares of SPQS stock to Goldwater Group, (v) 195,000,000 shares of SPQS stock to Energy 101 Consulting LLC, (vi) 50,000,000 shares of SPQS stock to Exuma Capital Inc, (vii) 195,000,000 shares of SPQS stock to JJM Consulting Inc, (viii) 16,645,311 shares of SPQS stock to KCG Americas LLC, (ix) 36,970,783 shares of SPQS stock to National Financial Services LLC and (x) 50,000,000 shares of SPQS stock to John Bryan Pike. Veselinovic Dec ¶¶ 9-28. Upon investigating SPQS books and records, new management cannot locate any record or evidence of consideration provided by any of the above Defendants. Id.

At all relevant times herein, Continental Stock Transfer & Trust Company served as the transfer agent ("Continental"). Veselinovic Dec ¶29.  Continental possesses no record of any payment, compensation, or consideration provided by Defendants to SPQS in exchange for the shares at issue. Veselinovic Dec ¶30.

For these reasons, SPQS submits that the issuance of shares to the Defendants was void, for Rule 144(d)(1)(iii) states that, "If the acquiror takes the securities by purchase, the

holding period shall not begin until the full purchase price or other consideration is paid or given

by the person acquiring the securities from the issuer or from an affiliate of the issuer".

                    b.   SPQS Will Suffer Irreparable Harm Absent Injunctive Relief

           To demonstrate irreparable harm, a plaintiff must show an injury that is "actual

and imminent" and cannot be remedied by an award of monetary damages." *Shapiro v. Cadman*

*Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (citation and internal quotation marks omitted). An

award of money damages is inadequate "where a non-movant's assets may be dissipated before

final relief can be granted, or where the non-movant threatens to remove its assets from the

court's jurisdiction, such that an award of monetary relief would be meaningless[.]" *Firemen's*

*Ins. Co. of Newark, New Jersey v. Keating*, 753 F. Supp. 1146, 1153 (S.D.N.Y. 1990) (citation

omitted); *see also Itek Corp. v. First National Bank*, 730 F.2d 19, 22-13 (1st Cir. 1984) ("The

recent history of relations between Iran and the United States indicates that this remedy is

inadequate. [Plaintiff]'s efforts to recover money that [it] is legally owed through the Iranian

courts would be futile").

           Here, SPQS will suffer irreparably harm without injunctive relief. SPQS faces

imminent and irreparably injury if Defendants attempt to market and complete a sale of their

shares to another individual during the pendency of this action. Veselinovic Dec ¶34. The

marketing and transfer of these improperly and illegally issued shares will cause imminent harm

to SPQS, its business goodwill, and reputation amongst potential investors. Id. If marketing were

to occur a transfer to a third party were to occur, monetary damages would not be appropriate

measure of the damage if the shares are marketed and transferred to a bona fide purchaser.

Veselinovic Dec ¶35. SPQS is building its business goodwill and reputation daily, which is

vitally important in the over-the-counter world. Veselinovic Dec ¶36. If the Defendants were to

market and transfer their shares during the pendency of this action, it would severely injure

market confidence in SPQS. Id. There is no adequate remedy at law to compensate SPQS for the

harm that would be caused by Defendants marketing and transfer of the above-discussed shares.

c.   The Balance of Hardships Tilts Decidedly Toward SPQS

Balancing the harm caused to SPQS by Defendants potential actions versus the potential

harm to Defendants if their shares were frozen from marketing and transfer during the pendency

of this litigations, results in SPQS clearly prevailing. Holding onto and not marketing improperly

and illegally issued shares is not detrimental to Defendants whatsoever. And the harm to SPQS

as discussed is far greater. The balance of the equities weigh heavily in favor in enjoining any

marketing or sale of these shares during the pendency of this action or thereafter if SPQS

prevails.

d.   The Public Interest Favors Granting Injunctive Relief

The public interest is best served in enjoining the marketing and transfer of these

suspect shares, so that individuals do not acquire these illegally and improperly issued shares,

causing them harm.

## IV. CONCLUSION

For the reasons set forth herein, SPQS respectfully requests that its motion by order to show cause for the entry of (1) a temporary restraining order pending the resolution of the motion for a preliminary injunction, and, after expedited discovery, (2) a preliminary injunction pending the resolution on the merits of the present action be granted.

Dated:  New York, New York
        August 9, 2022

                            The Shell Law Firm, PLLC
                            Attorneys for Plaintiff, SportsQuest, Inc.


                    By:    s/ Martin Shell
                            Martin Shell, Esq. (MS, 5689)
                            11 Broadway, Suite 615
                            New York, New York 10004
                            (646) 616- 3983